UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALLEN EUGENE GREGORY,

Petitioner,

v.

DONALD R. HOLBROOK, Superintendent, Washington State Penitentiary, Washington State Department of Corrections,

Respondent.

CASE NO. 3:22-cv-05426-TL-DWC

ORDER ON REPORT AND RECOMMENDATION

Petitioner Allen Eugene Gregory seeks a writ of habeas corpus for relief from a state conviction. This matter comes before the Court on the Report and Recommendation of the Honorable David W. Christel, United States Magistrate Judge (the "R&R"), which recommends denial of the petition. Dkt. No. 31. Having reviewed the R&R, Petitioner's objections to the R&R (Dkt. No. 34), Respondent Donald R. Holbrook's response to the objections (Dkt. No. 35), and the relevant record, the Court MODIFIES IN PART and ADOPTS IN PART the R&R, GRANTS a limited certificate of appealability, and OVERRULES all other objections.

## I. Background

The factual background of this matter is largely detailed in two decisions of the Washington Supreme Court. *See* Dkt. No. 13-1 at 20–80 (decision in *State v. Gregory* ("*Gregory I*"), 158 Wn.2d 759, 147 P.3d 1201 (2006)); Dkt. No. 13-2 at 1090–1111 (decision in *State v. Gregory* ("*Gregory II*"), 192 Wn.2d 1, 427 P.3d 621 (2018)). Only the facts relevant to this Order are recounted here.

### A. Collection of DNA Evidence

In 1996, G.H. was found dead in her home, the victim of an apparent stabbing, rape, and robbery. Dkt. No. 13-1 at 37. Police initially suspected Petitioner was involved when he gave inconsistent statements about his whereabouts at the time of the crime, but they had no additional evidence connecting him to the crime. *Id.* at 38.

In 1998, R.S. accused Petitioner of repeatedly raping her at knifepoint. Dkt. No. 13-1 at 22. "[R.S.] was a long-time paid police informant for various police agencies including the Tacoma Police Department." Dkt. No. 34 at 2. "She was also an emotionally unstable drug addict, with a long history of prostitution and theft-type charges." *Id.* R.S. once identified her occupation as "an operative for the police." *Id.* (citing Dkt. No. 13-2 at 328). As part of the ensuing rape case, police applied for (and obtained) a search warrant for Petitioner's car and a blood draw from Petitioner while omitting information about R.S.'s criminal history, mental health issues, and her work as an informant. *See* Dkt. No. 13-2 at 1296–97 (application for search warrant). The search uncovered a knife and condom (Dkt. No. 13-1 at 22), and DNA testing from the blood draw pointed to Petitioner as the likely source of semen found at the 1996 murder scene (Dkt. No. 13-1 at 38).

On December 10, 1999, new counsel in Petitioner's rape case moved to suppress the results of the 1998 blood draw as unsupported by probable cause or valid consent. Dkt. No. 13-1

at 42. In response, the government applied again for a blood draw "using only the information known to the State at the time of the first blood draw." *Id.*; *see* Dkt. No. 13-2 at 1303–09 (application for second blood draw). The blood draw was authorized and performed in 2000. Dkt. No. 13-1 at 42.

Counsel in Petitioner's murder case also moved to suppress the DNA results from the blood draws. Dkt. No. 13-1 at 32. "Although counsel raised multiple grounds for suppression, defense counsel raised no claim related to the omissions regarding [R.S.'s] background" under *Franks v. Delaware*, 438 U.S. 54 (1978). Dkt. No. 34 at 4. "That is because while Mr. Gregory's counsel in his rape case *knew* that [R.S.] was a paid police informant, the State did not disclose her close relationship with law enforcement or her other background history to Mr. Gregory's lawyers in his murder case." *Id.* (emphasis added). The court denied the motion, finding that collateral estoppel compelled the conclusion that the 1998 blood draw was the result of a proper agreed order and the 2000 blood draw was supported by probable cause. Dkt. No. 13-1 at 42.

**B.     Disqualification of Juror**

Petitioner was ultimately brought to trial in his murder case. During voir dire, Juror 1 was examined. Dkt. No. 13-4 at 198–227 (transcript of examination). The Washington Supreme Court summarized her examination as follows:

> In this case, juror 1 indicated seven times that if the alternative was life with no chance of release, then she could not vote for the death penalty. In contrast, she later testified that she thought she could follow the court's instructions and impose the death penalty if the State proved death was warranted beyond a reasonable doubt. Significantly, she said that she could tell which answers counsel were looking for and she was not comfortable in disagreeing with the attorneys. She explained the inconsistencies in her answers by stating that she had had time to think about the issue.

Dkt. No. 13-1 at 38–39. Juror 1 was ultimately dismissed on the government's challenge for cause. *See* Dkt. No. 13-4 at 227–32 (transcript of oral argument on challenge). The trial court explained:

> This juror repeated approximately three times according to my notes, when asked if she could vote for the death penalty if she knew a person could get life in prison without parole, she said 'probably not' at least three times. I know that on her questionnaire and during some of her other answers, she stated that she could if it was a serial murder type of case.
>
> I believe it's very clear from her answers that she probably is not capable of voting for the death penalty, knowing the alternative is life in prison. So I will grant the state's challenge for cause.

*Id.* at 231 (2224:13–23).

In 2000, Petitioner was convicted of three counts of rape in the first degree and sentenced to 331 months imprisonment. Dkt. No. 13-1 at 23. In 2001, Petitioner was convicted of aggravated first-degree murder and sentenced to the death penalty. Dkt. No. 13-1 at 38.

**C. The First Appeal**

Following his convictions, Petitioner appealed both judgments to the Washington Supreme Court, which consolidated the cases. Dkt. No. 13-1 at 21. Petitioner challenged the trial court's refusal to suppress the DNA obtained in the 1998 and 2000 blood draws. Dkt. No. 13-1 at 41–43. Petitioner also argued that even if the blood draws were justified in the rape case, they were not properly used to develop evidence for the murder case. *Id.* at 43–45.

The Washington Supreme Court rejected Petitioner's arguments. The court held that even if the 1998 blood draw was improper, there were valid reasons (arising only from the rape case) for the 2000 blood draw. Dkt. No. 13-1 at 43. The court further reasoned that the DNA results would thus have been inevitably discovered, and there was no need to independently evaluate the 1998 blood draw. *Id.* However, the court reversed Petitioner's rape conviction because it was

discovered that R.S. had lied in defense pretrial interviews about her drug use. Dkt. No. 13-1 at 31–32. The court ultimately affirmed the murder conviction, but reversed the death sentence and remanded because the rape convictions were used in the penalty phase of the murder trial. *Id.* at 21–22.

**D.    The Second Appeal**

In 2010, defense counsel interviewed R.S. in preparation for a new rape trial. R.S. admitted that she had been working as a paid police informant for two decades, and she admitted (contrary to her trial testimony) that some of her interactions with Petitioner were consensual. *See* Dkt. No. 13-2 at 1349, 1370. In response, the trial court ordered the prosecution to produce various related materials about R.S.'s work as a police informant. Dkt. No. 34 at 6. The prosecution subsequently moved to dismiss the rape charges, citing R.S.'s "inconsistent statements." Dkt. No. 13-2 at 1093.

In 2011, defense counsel in Petitioner's murder case filed a motion to suppress (both blood draws and the search warrant), to dismiss the death penalty, for a new trial, and for a *Franks* hearing based on the recent disclosures about R.S. *See* Dkt. No. 29-1 (motion). Petitioner argued that "when he filed his initial motion to suppress, he was unaware of [R.S.'s] full history as a paid informant." Dkt. No. 34 at 7. However, the trial court denied all relief. *See* Dkt. No. 29-2 (order). The court reasoned:

> The only fact that appears to exist now that did not exist when the defendant raised this issue during his direct appeal from his conviction and death sentence is the fact that the rape case has now been dismissed. The court rejects the claim that the defendant did not discover until recently the fact that R.S. had a history of being a police informant in drug investigations. The court does not find the State withheld any evidence, or any material fact, that could have affected the issuance of the order for a DNA sample from the defendant.

> Moreover, in the defendant's direct appeal, the Washington Supreme Court addressed and upheld the issuance of the orders for the blood draws. This court does not have the authority to rule the blood draw orders invalid when a higher court has upheld their validity, because this motion and the issue on appeal were based on the same facts.

Dkt. No. 29-2 at 3 (citation omitted).

Petitioner filed a *pro se* motion to reconsider, which was later argued by counsel at a hearing. *See* Dkt. No. 29-3 (motion), 29-4 (transcript of hearing). The trial court denied the motion, stating:

> I will be denying the motion to reconsider. In particular, I'm focusing on the *Franks* hearing, and because I really don't see how that would affect or be relevant to a matter which the Supreme Court has already decided, that is the appeal of the conviction for aggravated first degree murder. So I'll deny that reconsideration. You can consider taking that up on appeal and then we'll follow the directions that come down from the Supreme Court with regard to that issue.

Dkt. No. 29-4 at 56–57 (2237:19–2238:2).

Petitioner then filed his second appeal to the Washington Supreme Court. In its decision, the court held that the death penalty was unconstitutional, reversed Petitioner's sentence, and remanded for resentencing. Dkt. No. 13-2 at 1093–1102. However, as to Petitioner's motion to suppress and related *Franks* claim, the court declined to review the arguments "because reconsideration is barred by law of the case doctrine." *Id.* at 1103; *see id.* at 1103–04. The court also found that special review was not warranted under the appellate rules, as the trial court did not exercise "independent judgment" in ruling on the issue on remand. *Id.* at 1104.

**E. The Personal Restraint Petition**

After the conclusion of the second appeal, Petitioner filed a personal restraint petition ("PRP"), arguing that he was entitled to a *Franks* hearing. *See* Dkt. No. 13-2 at 1169–1243 (brief). Petitioner argued again that the affidavits underling the search warrant and blood draws

"omitted key facts" about R.S.'s history of police cooperation. Dkt. No. 34 at 10. However, the Washington Court of Appeals denied all relief. *See* Dkt. No. 13-3 at 133–162 (order); *In re Gregory*, 17 Wn. App. 2d 1078, 2021 WL 2444978 (2021). The court ruled that Petitioner was "precluded from asserting his challenges to the search warrant and blood draw orders in a PRP because the Supreme Court addressed and rejected those claims in the two previous appeals." Dkt. No. 13-3 at 192. The court explained that "the PRP rule precluding a petitioner from raising issues that have been rejected on direct appeal is consistent with the law of the case doctrine. Under that doctrine, the holding of an appellate court decision on a legal issue must be followed in all of the subsequent stages of the same litigation." *Id.* at 202.

## II. Legal Standard

### A. District Court Review of a Report and Recommendation

A district court has jurisdiction to review a magistrate judge's report and recommendation on "applications for posttrial relief made by individuals convicted of criminal offenses." 28 U.S.C. § 636(b)(1)(B); *see also* Rule 8(b) of the Rules Governing § 2254 Cases ("A judge may . . . refer the petition to a magistrate judge to conduct hearings and to file proposed findings of fact and recommendations for disposition."); Rule 10 ("A magistrate judge may perform the duties of a district judge under these rules, as authorized under 28 U.S.C. § 636."). "Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1)(C); *accord* Rule 8(b). The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

**B. Federal Habeas Review**

Under two circumstances, a federal court may grant habeas relief with respect to a claim adjudicated on the merits in state court.

First, a federal court may grant relief if the state adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphases added). A state decision is "contrary to" clearly established Supreme Court precedent if the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law"; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state decision involves an "unreasonable application" of clearly established Supreme Court precedent if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. A decision also involves an "unreasonable application" if the state court "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407). Review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Second, a federal court may grant relief if the state adjudication "resulted in a decision that was based on an *unreasonable determination of the facts* in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (emphasis added); *accord Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (observing that the determination must be

"material"). A state court's factual determinations are "presumed to be correct" unless the petitioner rebuts the presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Discussion

Petitioner raises three objections to the R&R.[1] *See* Dkt. No. 34. Two objections concern the substance of the state proceedings. *Id.* at 2–18. The final objection concerns the denial of a certificate of appealability. *Id.* at 18–19. Respondent opposes all objections. *See* Dkt. No. 35. The Court considers each objection in turn.

### A. Ground Four: Fourth Amendment Claim

The magistrate judge concluded that Ground Four is not cognizable under § 2254 pursuant to *Stone v. Powell*, 428 U.S. 465 (1976). *See* Dkt. No. 31 at 20–25. Specifically, the magistrate judge held that "Petitioner had the opportunity to pursue and, in fact, pursued the unlawful search and seizure claims," and that the state court "merely declined to relitigate" the claims. *Id.* at 22, 23. Petitioner argues that he was never given an opportunity for full and fair litigation of the issue (presented in his 2011 motion to suppress) because the Washington courts found that the issue was already decided in Petitioner's 2006 appeal and thus declined to reach the merits. *See* Dkt. No. 34 at 11–15; *see also id.* at 15 ("By definition, a court's reliance on the law of the case doctrine precludes any meaningful review of a claim."). In opposition, Respondent argues[2] that Petitioner "had the fair opportunity, and in fact did, litigate his search and seizure claim in the state courts." Dkt. No. 35 at 3; *see also id.* at 4 ("The fact that

[1] Petitioner does not object to the disposition of most grounds, including Grounds 2–3 and 5–9.

[2] Respondent also argues that Petitioner's allegations "actually raise a claim of error under *Brady* and the Due Process Clause," not a Fourth Amendment claim. Dkt. No. 35 at 6–9. However, as the magistrate judge noted, Petitioner's counsel did not include arguments related to *Brady* in his Traverse. Dkt. No. 31 at 20 n.1. Further, Petitioner's objection characterizes Ground Four only as a *Franks* claim under the Fourth Amendment. *See* Dkt. No. 31 at 2–15.

[Petitioner] failed to timely raise the issue does not show he lacked the opportunity to litigate the claim.”).

“[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial.” *Stone*, 428 U.S. at 494; *see also id.* at 495 n.37 (holding that prisoner must show denial of opportunity “at trial and on direct review”). “The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided.” *Newman v. Wengler*, 790 F.3d 876, 880 (9th Cir. 2015) (quoting *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996)); *see also Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) (holding claim barred by *Stone* where petitioner “had an opportunity in state court” to litigate the claim, “[w]hether or not [petitioner] did in fact litigate” the claim).

First, “[t]he Washington Criminal Rules for Superior Court provide for a full and fair opportunity to litigate Fourth Amendment claims.” *Hunter v. Miller-Stout*, No. C12-5517, 2013 WL 1966168, at *14 (W.D. Wash. Apr. 23, 2013), *report and recommendation adopted*, 2013 WL 1964928 (W.D. Wash. May 10, 2013); *see also Gordon*, 895 F.2d at 613 (observing that “[u]nder California law, a defendant can move to suppress evidence on the basis that it was obtained in violation of the fourth amendment”).

Second, the apparent failure of Petitioner’s counsel in his rape case to raise a *Franks* claim does not mean that Petitioner did not have a full and fair opportunity to litigate the claim.[3] *See, e.g.*, *Hubbard v. Jeffes*, 653 F.2d 99, 103 (3d Cir. 1981) (“The failure to [make a pretrial suppression motion] was not brought about by any restriction of the opportunity by the state

[3] Petitioner does not raise any *Brady* or ineffective assistance claims in his objections.

courts."); *U.S. ex rel. Maxey v. Morris*, 591 F.2d 386, 388 (7th Cir. 1979) ("[Appellants] point out that [the Fourth Amendment claim] was in fact never litigated. This, of course, is their own fault since they never raised it."); *Sallie v. North Carolina*, 587 F.2d 636, 639 (4th Cir. 1978) ("The fact of the matter is that [appellant's] counsel failed to make any objection, fourth amendment or otherwise, to the introduction of the photographs or to the policeman's testimony."); *Gates v. Henderson*, 568 F.2d 830, 837 (2d Cir. 1977) (en banc) ("There is no contention here that the State of New York failed to provide the procedural devices affording [appellant] an opportunity to raise the issue of his allegedly unlawful arrest.").

Petitioner argues that he was "denied his full opportunity for full and fair litigation of his *Franks* claim because no court has ever considered much less resolved the disputed facts underlying his claim." Dkt. No. 34 at 12. But on Petitioner's 2011 motion, the trial court "reject[ed] the claim that the defendant did not discover until recently the fact that R.S. had a history of being a police informant in drug investigations," and "[did] not find the State withheld any evidence, or any material fact, that could have affected the issuance of the order for a DNA sample from the defendant." Dkt. No. 29-2 at 3. The court further explained that "this motion and the issue on appeal [in 2006] were based on the same facts." *Id.* Indeed, Petitioner acknowledges that "counsel in his rape case knew that [R.S.] was a paid police informant," even if the information was not disclosed to counsel in his murder case. Dkt. No. 34 at 4. Accordingly, in its 2018 order, the Washington Supreme Court pointed out that "the trial court found that this information was either known or made available to Gregory's attorney prior to the first trial," and thus "[Petitioner] failed to timely raise the issue in the trial court either prior to or during his first appeal." Dkt. No. 13-2 at 1103.The Court finds that Petitioner's claim is barred by *Stone*, as

he had the opportunity to pursue his *Franks* claim in state court but did not do so in a timely manner.[4]

For its part, the Ninth Circuit has cautioned that the "relevant inquiry" is "whether petitioner had the *opportunity* to litigate his claim, not whether he did in fact do so." *Newman*, 790 F.3d at 880 (emphasis added); *see also Tisnado v. United States*, 547 F.2d 452, 455 (9th Cir. 1976) ("[A]lthough it does not appear from the record that [appellant] in fact aired [his claims] on direct appeal, there is no showing that he was denied the 'opportunity' to do so."). Here, the record reflects that Petitioner had an opportunity to litigate his *Franks* claim but failed to do so in a timely manner. Therefore, Petitioner's objection is overruled.

**B.      Ground One: For-Cause Juror Strike**

The magistrate judge concluded that Ground One of the petition should be denied on three grounds: (1) the ground is moot (Dkt. No. 31 at 8); (2) the ground does not rest on clearly established federal law (*id.* at 8–9); and (3) the state court's adjudication of the ground is not contrary to or an unreasonable application of clearly established federal law (*id.* at 9–14). Petitioner argues that the state court's adjudication was indeed contrary to or an unreasonable

---

[4] Even if Petitioner's *Franks* claim was not barred by *Stone*, the claim appears unlikely to succeed. "A *Franks* hearing is appropriate only if [a defendant] can make a substantial preliminary showing that a false statement was deliberately or recklessly included in or omitted from a warrant affidavit, and that the false statements or omissions were material to the finding of probable cause." *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004). Nothing in either Petitioner's initial papers or objections seems to suggest deliberate or reckless action by police. *See generally* Dkt. Nos. 3, 29, 34. Petitioner's objection mainly focuses on two facts that were omitted from the warrant application and prosecutor's affidavit: (1) R.S. was a paid police informant; and (2) R.S. admitted lying about parts of the encounter when questioned in 2020. Dkt. No. 34 at 13. First, the mere fact of R.S.'s prior history as an informant does not undermine her credibility; in fact, it bolsters it. *See United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000) ("That the [informant] had previously provided truthful and reliable information to police . . . significantly bolsters his/her credibility and the reliability of the information provided."). Second, while R.S. did omit that she engaged in consensual sex with Petitioner in exchange for money, there is no indication that police or prosecutors *knew* she lied when they filed their affidavits, and R.S. maintained the rest of her account of events, including that Petitioner forcibly raped her after she asked him to stop. *See* Dkt. No. 34 at 6. Finally, Petitioner also mentions that photographs of his body at the time of the alleged rape did not match R.S.'s account of having scratched him during the rape (*see* Dkt. No. 34 at 8), but there is nothing in the affidavits about scratches, and R.S.'s physical injuries match what she described. *See* Dkt. No. 13-2 at 1306, 1308.

application of clearly established federal law (Dkt. No. 34 at 16–17) and that the ground is not moot (*id.* at 17–18). Respondent emphasizes, as the magistrate judge concluded, that the claim is moot (Dkt. No. 35 at 9–10) and the state court did not act unreasonably or contrary to federal law (*id.* at 10).

As an initial matter, the Court understands Petitioner to attack the validity of his *conviction*, not the validity of his current *sentence*, which was already reduced to account for the unconstitutionality of the death penalty in Washington. *See, e.g.*, Dkt. No. 29 at 20–28. Moreover, Petitioner remains "in custody" serving a term of life imprisonment for his murder conviction. *See* 28 U.S.C. §§ 2241(c)(3), 2254(a). Thus, taking Ground One on Petitioner's own terms, the Court finds that Ground One is not moot and MODIFIES the R&R as to this point.

However, the Court finds that the remainder of the objection is without merit because the state court's adjudication was not contrary to or an unreasonable application of clearly established federal law. The United States Supreme Court has held that a juror may not be excused for cause from a death penalty case simply because they express objections to the death penalty, and a jury so constituted cannot render a death sentence. *See Witherspoon v. Illinois*, 391 U.S. 510, 518 (1968); *Adams v. Texas*, 448 U.S. 38, 45 (1980). However, the Supreme Court has also held that such jurors *may* be excused if their views render them unable to carry out their duties impartially—the so-called "death qualification" of the jury. *See Lockhart v. McCree*, 476 U.S. 162, 173 (1986); *Buchanan v. Kentucky*, 483 U.S. 402, 414–15 (1987). Further, in analyzing Supreme Court precedent on habeas review, the Ninth Circuit has observed that "to the extent that death qualification affects deliberations, it does so at the penalty phase, not at the guilt phase, where jury discretion is closely channeled." *Furman v. Wood*, 190 F.3d 1002, 1005 (9th Cir. 1999) (citing *Buchanan*, 483 U.S. at 420); *see also Lockhart*, 476 U.S. at 183 ("We reject McCree's suggestion that *Witherspoon* and *Adams* have broad applicability outside the special

context of capital sentencing . . . ."); *Witherspoon*, 391 U.S. at 522 n.21 ("Nor, finally, does today's holding render invalid the conviction, as oppose to the sentence, in this or any other case."). Petitioner does not supply, and the Court cannot find, clearly established Supreme Court precedent that holds an error in death qualification has any consequences for the guilt phase of a trial. Nor could Petitioner make a colorable argument that it is unreasonable to not extend existing Supreme Court precedent to this new context.

Ultimately, Petitioner argues that his conviction is constitutionally infirm because he was "subject to *improper* death-qualification in a case and a system in which the death penalty was not legally supportable."[5] Dkt. No. 34 at 17–18 (emphasis in original). Whether such a challenge may lie is a matter of first impression and not a question before this Court, which sits in habeas review. It cannot be said that the state court acted contrary to, or unreasonably applied, Supreme Court precedent. Therefore, Petitioner's objection is OVERRULED.

**C. Certificate of Appealability**

The magistrate judge declined to issue a certificate of appealability ("COA"), finding that "[n]o jurist of reason would disagree with this Court's evaluation of Petitioner's claims or would conclude the issues presented in the Petition should proceed further." Dkt. No. 31 at 51. Petitioner argues that he meets the bar for issuance of a COA. Dkt. No. 35 at 18. Petitioner further argues that, if the Court does not issue a COA on the merits of his petition, the Court should issue a COA "on the question whether a COA should be required at all." *Id.* at 18–19. Petitioner notes that this issue is currently on appeal at the Ninth Circuit after another court in this District granted a COA on the issue. *See Noor v. Andrewjeski*, No. C22-270, 2023 WL

[5] Petitioner also asserts elsewhere that "the Supreme Court has left open the possibility that a claim about the deleterious effects of a death-qualification dismissal on the guilt phase of trial can survive the later reversal of the sentence itself." Dkt. No. 29 at 20–21.

4683863, at *15 (W.D. Wash. July 21, 2023) (granting COA on constitutional challenge to COA procedure), *appeal filed*, No. 23-1736 (9th Cir. 2023); *see also Wood v. Bennett*, No. C23-877, 2024 WL 1255999, at *4 (W.D. Wash. Mar. 25, 2024) (granting the same). In opposition, Respondent emphasizes that Petitioner "cannot show that this Court's resolution of his claims was debatable or wrong" and thus is not entitled to a COA. Dkt. No. 35 at 10–11. Respondent does not address Petitioner's request for a COA on the issue of the COA requirement.

"A prisoner seeking a COA need only demonstrate 'a substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (quoting 28 U.S.C. § 2253(c)(2)). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Id.* (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). This standard is "relatively low," and a court must "resolve doubts about the propriety of a COA in the petitioner's favor." *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002).

Here, the Court will not grant a COA on the merits of Petitioner's claims, as the Court harbors no doubts that any jurists of reason could disagree with the resolution of his claims. *Miller-El*, 537 U.S. at 327. However, the Court will join its sister courts in this District and grant a limited COA on the constitutionality of the COA procedure, as "the issues presented are adequate to deserve encouragement to proceed further." *See id.*; *Noor*, 2023 WL 4683863, at *15; *Wood*, 2024 WL 1255999, at *4. As Judge Chun has explained, evidence suggests that the COA requirement "may be rooted in racism, and racism is not a legitimate government interest under rational basis review." *Noor*, 2023 WL 4683863, at *15. "Further, the Supreme Court and Ninth Circuit have both indicated that the right to appeal is a fundamental right, the restriction of

which may violate a prisoner's right to due process and equal protection under the Fifth Amendment." *Id.* Therefore, this limited COA is granted.

## IV. CONCLUSION

Accordingly, the Report and Recommendation (Dkt. No. 31) is MODIFIED IN PART and ADOPTED IN PART and Petitioner's objections (Dkt. No. 34) are OVERRULED. A certificate of appealability is GRANTED as to the constitutionality of the COA procedure and is DENIED in all other respects.

Dated this 24th day of July 2024.

Tana Lin
United States District Judge